CALIFORNIA SECURITY CO–OP, INC.,
and SBI/Security Brokers, Inc.

v.

MULTIMEDIA CABLEVISION, INC.,
and Multimedia Security Service Inc.,
and Security Co–Op of America, Inc.

No. 2:94cv182.

United States District Court,
E.D. Texas,
Marshall Division.

Aug. 3, 1995.

Francis Scott Baldwin, Jr., Baldwin & Baldwin, Marshall, TX and Ken M. Peterson, Morris, Laing, Evans, Brock & Kennedy, Wichita, KS, for plaintiff.

Jim E. Cowles, Cowles & Thompson, Dallas, TX and Walter F. Palmer, Palmer & Neal, Inc., Marshall, TX, for defendant.

## ORDER

FOLSOM, District Judge.

Before the Court is the Defendants' Motion to Dismiss, Transfer Venue, or Stay and the responses thereto. After careful consideration, the Court finds that the motion is well taken.

## I. BACKGROUND

On April 6, 1994, Multimedia Cablevision, Inc. and Multimedia Security Service, Inc., (collectively "Multimedia"), filed suit against California Security Co–Op, Inc. and Security Brokers, Inc., (collectively "Security"), in the United States District Court for the District of Kansas (the "Kansas action"). Multimedia alleged that Security breached an agreement ("agreement") entered into by the parties on September 23, 1992, involving installed security alarm contracts. In August of 1994, Security filed a counterclaim in the Kansas Action against Multimedia alleging, inter alia, that Multimedia breached the agreement and conspired with others to steal and use Security's valuable intellectual property and proprietary business information. On Novem-

ber 15, 1994, Security filed suit against Multimedia and Security Co–Op of America, Inc. ("SCOPA") in this Court. Here, Security alleges essentially the same unlawful conduct as asserted in their counterclaim in the Kansas action but has added Texas and federal antitrust claims. Security has also added two additional parties. Security first added SCOPA as an additional defendant allegedly involved with Multimedia in the theft of Security's trade secrets. Recently, Security added Multimedia, Inc., a third "Multimedia" entity, as an additional defendant. Multimedia moves to dismiss, transfer or stay based on the duplicative nature of the two actions.

## II. DISCUSSION

■ The Fifth Circuit generally follows the first-to-file rule. *See West Gulf Maritime Ass'n v. ILA Deep Sea Local,* 751 F.2d 721, 730 (5th Cir.1985). "The federal courts have long recognized that the principle of comity requires federal district courts— courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Id. at* 728. The general principle in the interrelation of federal district courts is to avoid duplicative litigation. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Federal courts should try to avoid the waste of this duplication as well as rulings which may trench upon the authority of sister courts and piecemeal resolution of issues that call for a uniform result. *West Gulf Maritime Ass'n,* 751 F.2d at 729. In deciding whether to apply the first-to-file rule, the Court must resolve two questions: 1) are the two pending actions so duplicative or do they involve such substantially similar issues that one court should decide the subject matter of both actions, and if so, 2) which of the two courts should take the case. *Texas Instruments v. Micron Semiconductor,* 815 F.Supp. 994, 997 (E.D.Tex.1993).

■ The first issue is whether the Kansas action and this action are "duplicative" or involve "substantially similar" issues so as to require application of the first-to-file rule. In meeting this first requirement, it is enough that the "overall content of each suit

is not very capable of independent development, and will be likely 'to overlap to a substantial degree.'" *Superior Sav. Ass'n v. Bank of Dallas,* 705 F.Supp. 326, 329 (N.D.Tex.1989) (*quoting Mann Manufacturing, Inc.,* 439 F.2d at 407 and 408 n. 6)). The cases need not be identical to be duplicative. *Id.* at 329.

▆ It is clear that the two actions involve essentially the same, if not exactly the same, subject matter. In Kansas, Multimedia filed action against Security claiming that Security breached the agreement. Multimedia also seeks a declaratory judgment that Multimedia did not breach the agreement and that therefore, Security is not entitled to any damages from Multimedia. Security filed a counterclaim against Multimedia asserting breach of contract, misrepresentation, "tortious bad faith breach" of the agreement, fraud, tortious interference with contract, civil conspiracy, theft of trade secrets, and unfair trade practices.

In its complaint filed in this Court, Security asserts breach of contract, civil conspiracy, misappropriation and theft of trade secrets, aiding and abetting, fraud, and tortious interference with contract. Security also seeks a declaratory judgment finding that Security did not breach the agreement. Security has recently added Texas and federal antitrust claims.

The only arguable distinctions in this action are the inclusion of SCOPA and Multimedia, Inc. as additional defendants and the antitrust claims as additional causes of action. These are differences in form rather than substance and it is unquestionable that the two actions are duplicative and overlap substantially if not completely. Moreover, SCOPA was included in the Kansas action by reference even though it was not included as a party. In its counterclaim in the Kansas action, Security set out that "plaintiffs in conspiracy with *others* ..." committed a breach of contract and tortious misappropriation. *See Defendants' Second Amended Answer and Counter Claims, Counts IX and X* (emphasis added). Consequently, when SCOPA was included as a party, the subject matter did not change. Rather, "others" was clarified to mean SCOPA. Similarly, the

subject matter of the actions did not change when the antitrust claims were added. Security is alleging essentially the same conduct here but has simply discovered a potential alternate route to recovery.

Having found that the two actions involve duplicative subject matter, the Court must consider which of the two courts should take the case. "In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir.1971). Once the likelihood of a substantial overlap between two suits has been demonstrated, *it is no longer up to the second court to resolve the question of whether both courts should be allowed to proceed. West Gulf Maritime Ass'n,* 751 F.2d at 730 (citations omitted). "Considerations of comity and orderly administration *of justice dictate that two courts of equal authority should not hear the same case simultaneously." Id.* at 729 (*quoting with approval Washington Metropolitan Area Transit Authority v. Ragonese,* 617 F.2d 828, 830 (D.C.Cir.1980)).

This issue of whether this Court should proceed has been considerably decided by Judge Belot's recent Order in the Kansas action, dated March 22, 1995 ("Order"). In the Kansas action, Security had filed motions to dismiss for lack of personal jurisdiction, failure to state a claim, improper venue and had moved for a transfer of the case to this Court. Judge Belot found that the case should remain and proceed in Kansas. In making this decision, he made the following findings:

1) The Plaintiffs (Multimedia) stated a claim against the Defendants (Security),

2) The Kansas District Court has personal jurisdiction over California Security Co–Op, Inc.,

3) The Kansas District Court has personal jurisdiction over SBI/Security Brokers, Inc.,

4) The Kansas action was not merely an anticipatory lawsuit, and

5) Venue is proper in Wichita, Kansas. *See Order.*

In finding that venue is proper in Wichita, Judge Belot stated that the factors *"weigh strongly* in favor of maintaining this action in [Kansas]." *Order,* p. 18 (emphasis added). He noted that the plaintiffs' choice of forum is entitled to substantial weight and that Wichita, Kansas, is a more convenient location than Marshall, Texas, for the witnesses who have been identified. *Id.* at 18–19. This Court respects these findings and must decline to unnecessarily duplicate or make conflicting findings.

■ This Court is aware that the first-to-file rule is not an inflexible rule. *Texas Instruments,* 815 F.Supp. at 997. Even though the first-to-file rule normally serves to promote efficiency and should therefore not be disregarded lightly, circumstances and modern judicial reality may demand a different approach from time to time. *Id.* at 997 (*citing Church of Scientology of California v. United States Department of the Army,* 611 F.2d 738, 750 (9th Cir.1979)). However, to avoid the application of the first-to-file rule, the party avoiding its application must show the existence of "compelling circumstances." *See Mann Manufacturing, Inc.,* 439 F.2d at 407; *Igloo Products Corp. v. Mounties, Inc.,* 735 F.Supp. 214, 217 (S.D.Tex 1990).

One such exception to the first-to-file rule is when the first-filed suit is filed in anticipation of the subsequent suit. *See Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661, 663 (5th Cir.1967). Security argues that "the Kansas action was a purely anticipatory lawsuit filed by [Multimedia] for the purpose of preventing [Security] from bringing suit in the Eastern District of Texas...." *Plaintiffs Response to Defendants' Brief in Support of Motion to Dismiss, Transfer or Stay,* p. 2. Security further argues that this is especially true because the Kansas "anticipatory suit" is a declaratory action. *Response to motion to Dismiss, Transfer or Stay,* p. 7. However, the Kansas court examined this argument and made it clear that it found no evidence that the Kansas action is merely an anticipatory suit. *Order,* p. 17–18. The Kansas court further found that the Kansas action is an action in which Multimedia seeks damages against Security for an alleged breach of contract and for inducing an alleged breach of contract as well as a declaratory action. *Id. at* 17. This Court is not in a position to make conflicting findings on this issue.

■ Security also argues that this Court should not follow the first-to-file rule because the Kansas Court does not have personal jurisdiction over SCOPA. This Court is in a peculiar position because it cannot, of course, decide for the Kansas court whether the Kansas court has personal jurisdiction over SCOPA. On the other hand, this Court must decide what it should do with this case. Consequently, it must be determined whether there is a reasonable probability that the Kansas court has personal jurisdiction over SCOPA. The Court finds that there is.

First, SCOPA has consented to personal jurisdiction by the Kansas court. The requirement of personal jurisdiction is a personal right and can be waived. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982); *Petrowski v. Hawkeye–Security Ins. Co.,* 350 U.S. 495, 76 S.Ct. 490, 100 L.Ed. 639 (1956). Second, the Kansas court is well aware of the facts of this case and has suggested that it has jurisdiction over SCOPA:

> Defendants [Security] do note that SCOPA is a named party to the Marshall lawsuit, but not to this lawsuit in Wichita. However, SCOPA has consented to jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). Therefore, it appears that defendants could file and litigate in this district their claims against SCOPA given SCOPA's written consent.

*Order* at 18.

Finally, SCOPA's alleged actions indicate that the Kansas Court has jurisdiction over SCOPA. A federal court will have personal jurisdiction over a party if two familiar conditions are met. First, the state's long-arm statute must confer personal jurisdiction, and second, the exercise of jurisdiction must comport with the requirements of due process.

*D.J. Investments v. Metzeler Motorcycle Tire,* 754 F.2d 542, 545 (5th Cir.1985).

The Kansas long-arm statute provides that:

> [a]ny person, whether or not a citizen or a resident of this state, who in person or through an agent . . ., does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) Transaction of any business within this state;
>
> (2) Commission of a tortious act within this state;
>
> (5) Entering into an express or implied contract by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this State.

Kan.Stat.Ann. § 60–308. SCOPA entered into a purchase contract with Multimedia in Kansas in December of 1992. Further, Michael Burrus, President of Multimedia, has testified that 1) SCOPA's employees went to Kansas more than ten times during the negotiations of the purchase contract, 2) SCOPA's employees went to Kansas more than ten times after the purchase contract was signed, and 3) the purchase contract with SCOPA was performed in large part in Kansas. *See Affidavit of Michael Burrus,* paragraph 14. In paragraph 11 of the Plaintiffs' Response to Defendants' Brief in Support of Motion to Dismiss, Transfer or Stay, Security alleges that "[i]n all of Multimedia's negotiations with SCOPA, Multimedia had actual knowledge that SCOPA had stolen [Security's] property for use in Texas." In Security's First Amended Complaint, it alleges that Multimedia and SCOPA were involved in a civil conspiracy to take Security's trade secrets and confidential business information, and that they misappropriated these trade secrets. As set out above, Kan.Stat.Ann. § 60–308 provides that SCOPA is subject to *"any causes of action arising from "* transacting business within Kansas, from entering into a contract with a resident of Kansas to be performed in whole or in part by either party in Kansas, or committing a tortious act

within Kansas. Without going into an elaborate analysis, SCOPA seems to be covered under the Kansas long-arm statute.

The exercise of personal jurisdiction must also comport with due process. Kansas' long-arm statute has been interpreted to reach as far as constitutionally permitted, *see Misco–United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248 (1974), so the true inquiry is really one of due process. As stated earlier, the requirement of personal jurisdiction is a personal right. *Insurance Corp. of Ireland,* 456 U.S. at 703, 102 S.Ct. at 2105. In this case, SCOPA has apparently effectively consented to jurisdiction in the Kansas court and it is Security, not SCOPA, that is claiming that the Kansas court has no personal jurisdiction over SCOPA. Nonetheless, where there is no consent to personal jurisdiction, due process typically requires that the defendant 1) have minimum contacts with the forum such that 2) the maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant *who has not consented to suit there,"* the fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injures that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted) (emphasis added). Once again, without extended due process analysis, the Kansas Court's exercise of personal jurisdiction would seem to comport with due process. This would appear to be true even if SCOPA had not consented to the jurisdiction of that court. However, the fact that SCOPA has consented to jurisdiction gives the Kansas court additional justification for asserting jurisdiction over SCOPA. Furthermore, even if most of the harm caused by the alleged actions of SCOPA occurred in Texas, as Security claims, this certainly does not oust the Kansas court of personal jurisdiction over SCOPA.

Security has presented no other "compelling" evidence that would justify an exception to the first-to-file rule. Therefore, the Court concludes that it should abstain from hearing this case due to same subject matter pending in the Kansas action. Now it must be decided whether to dismiss, transfer or stay these proceedings.

A stay may have been appropriate had the Kansas court not ruled on Security's motion to dismiss or transfer. However, once a first-filed court denies transfer, any such stay should be lifted and the second-filed action should be dismissed or transferred and consolidated with the first-filed action. *West Gulf Maritime Ass'n*, 751 F.2d at 729 n. 1. The Court also declines to dismiss this action. A dismissal would only serve to force Security to refile its claims against SCOPA in the Kansas Court which could lead to a further delay of the proceedings.

The Court decides that this action should be transferred to the United States District Court for the District of Kansas where the Kansas court can consolidate the cases in a manner it feels is appropriate. In its initial response to Multimedia's motion to transfer, Security asserted that a transfer would be improper in light of *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). *Hoffman* held that if a suit could not have been filed in a particular court to begin with, then it cannot be transferred to that court under 28 U.S.C. § 1404(a) which allows an action to be transferred to "any other district or division where it *might have been brought.*" *Id.* at 344, 80 S.Ct. at 1090 (emphasis added). *Hoffman,* however, was a case where there was no independent factual basis for venue or personal jurisdiction over the defendants in the transferee court aside from the defendants' consent. In this case, there is an independent factual basis for personal jurisdiction over SCOPA in the Kansas court irrespective of SCOPA's consent. Furthermore, as discussed above, this Court could dismiss this action and Security would simply be forced to add the additional parties and claims in the Kansas action. This, however, would not be in the best interests of judicial economy since it is highly possible that there has been work conducted in this action which would have to be duplicated in the Kansas action were the two actions not consolidated. Therefore, the Court finds that a transfer and consolidation of this case is the most reasonable resolution of this forum dispute.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED, ADJUDGED AND DECREED that the Defendants' Motion to Transfer is GRANTED. It is further

ORDERED that this case be TRANSFERRED to the United States District Court for the District of Kansas. It is further

ORDERED that a copy of this Order be sent to the Clerk of Court for the United States District Court for the District of Kansas. It is further

ORDERED that the Defendants' Motion to Abate and Motion for Allowance of Oral Argument are denied as MOOT.